[Cite as *State v. Mantell*, 2025-Ohio-96.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 31157 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL S. MANTELL | | STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. 2024 CRB 00181 |

## DECISION AND JOURNAL ENTRY

Dated: January 15, 2025

SUTTON, Presiding Judge.

{¶1} Defendant-Appellant Michael Mantell appeals the judgment of the Stow Municipal Court. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2} Mr. Mantell was charged with domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, in the Stow Municipal Court. The charge arose from an incident that occurred in Tallmadge, Ohio on January 22, 2024. The matter proceeded to a bench trial and the trial court found Mr. Mantell guilty of domestic violence against his girlfriend M.T. The trial court sentenced Mr. Mantell to 180 days in jail, suspended 176 days and gave him credit for 4 days of time served. The trial court also imposed a fine of $1,000.00 plus court costs, suspended $900.00 of the fine, and placed him on 12 months of community control, requiring him to obey all laws for two years. The trial court stayed Mr. Mantell's sentence pending appeal.

**{¶3}** Mr. Mantell appealed, assigning one error for our review.

**II.**

**ASSIGNMENT OF ERROR**

**THE [TRIAL COURT'S] VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND PREJUDICIAL AGAINST [MR. MANTELL].**

**{¶4}** Mr. Mantell argues his conviction for domestic violence is against the manifest weight of the evidence. Specifically, he argues his and M.T.'s trial testimony that no domestic violence occurred was credible and what M.T. had reported to police the evening of January 22, 2024, was a fabrication.

**{¶5}** In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). We are mindful that the trier of fact "is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *See State v. Darr*, 2018-Ohio-2548, ¶ 32 (9th Dist.). A reversal on a manifest weight of the evidence challenge is reserved for exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

**{¶6}** Mr. Mantell was charged with domestic violence in violation of R.C. 2919.25(A) against his girlfriend M.T., with whom he resided. R.C. 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶7}    There were two versions of the events of January 22, 2024, presented at Mr. Mantell's trial.  The following evidence was presented by the State concerning one version.  On January 22, 2024, at 9:50 pm, Dispatcher Erin Braskie of the South Summit Emergency Communications Center received a 911 call from M.T., who stated, "my boyfriend beat me up," and identified Michael Mantell as her boyfriend.  Ms. Braskie testified M.T. sounded very distraught and upset, like she was crying.  M.T. stated Mr. Mantell was "physically horrible" to her, put his hands on her, hit her, and pulled her hair.  M.T. stated Mr. Mantell was still there and might be leaving because she heard the door shut, but she was locked in the bathroom so she was not sure.  M.T. said there were no weapons and no threats.  M.T. said Mr. Mantell probably took her keys and her car.  M.T. told the dispatcher she was "quite terrified."  M.T. stated to the dispatcher she and Mr. Mantell had both been drinking that evening.

{¶8}    Police Sergeant Ralph Stover with the Tallmadge Police Department arrived on the scene while M.T. was still on the telephone with the dispatcher.  Sergeant Stover recorded his encounter with M.T. on his body-worn camera ("body-cam.").  He observed M.T. outside crying and trembling.  Once inside M.T.'s apartment, Sergeant Stover observed there appeared to have been a struggle in the kitchen as cat bowls and cat food were tossed around, while the rest of the apartment appeared to be fairly tidy.  Sergeant Stover observed a knot on the side of M.T.'s face that was swelling and took photographs of M.T.'s injuries.  M.T.'s injuries were more clearly captured on the body-cam recording, which was admitted into evidence.  Although M.T. stated she had been drinking, Sergeant Stover did not believe she had impaired judgment because she did not have slurred speech and was able to walk,

{¶9}    M.T. told Sergeant Stover Mr. Mantell had lost his job that day and was upset and on edge.  Mr. Mantell suggested they go to the Windsor Pub in Akron to shoot some pool.  In the

parking lot of the pub, Mr. Mantell became verbally abusive to M.T., so she kicked him out of her car and drove home. Mr. Mantell walked home and entered the apartment, pulled M.T. into the kitchen and began pulling her hair and he punched her in the face. M.T. broke free and ran into the bathroom. She closed the door and called 911. Mr. Mantell kicked open the bathroom door and laid a knife on the bathroom counter next to the sink.

{¶10} While police officers were still at the scene, M.T. showed them text messages from Mr. Mantell that were angry in nature, such as "I just seen you pull out of the f****** parking lot" (alterations in original) and "I'm going to kick in our door where I live and I get mail". Mr. Mantell continued to text M.T. while officers were there. He sent a photo of M.T.'s wrecked vehicle showing substantial right front wheel damage and a text that read, "Do you know I just wrecked the car and everything is bad I just wrecked the car because of what you did". Based on his training and experience, Sergeant Stover believed the vehicle would have been disabled and undriveable from the damage. M.T. stated the car had been in perfect condition before Mr. Mantell took it that evening.

{¶11} Mr. Mantell then called M.T.'s phone, and Sergeant Stover spoke to him. Mr. Mantell told Sergeant Stover the man always gets blamed and M.T. was belligerent and to blame for the situation.

{¶12} Sergeant Stover transported M.T. to the police station where she signed a complaint for domestic violence against Mr. Mantell.

{¶13} M.T., who was called as the trial court's witness, stated Mr. Mantell was now her fiancé. M.T. testified to a different version of events than what she had reported to police on January 22, 2024. Prior to her calling 911, M.T. was driving her car with Mr. Mantell as a passenger and it was icy. A deer ran out in front of her, she swerved to miss the deer, swerved

into a telephone pole, and wrecked her car. M.T. was upset and had banged herself up because she had hit the steering wheel and dash and the airbags did not deploy. M.T. did not report the accident to police that evening. M.T. drove the vehicle home and she proceeded to get intoxicated and the more she drank, "the mouthier [she] got." Mr. Mantell said he was leaving to avoid a situation because M.T. was "a handful when [she] drink[s]." Mr. Mantell took M.T.'s car but did not make it far because it stopped running because it was "damaged pretty well." It was at that time Mr. Mantell texted her a picture of the damaged car. M.T. had called 911 because she was upset Mr. Mantell was leaving. Although M.T. talked at length on January 22, 2024, with the 911 dispatcher and Sergeant Stover, she never once mentioned that she wrecked her car but, a week later, M.T. spoke to police and stated the crashed vehicle was her car, she was the driver, she slid on ice and clipped a pole, and she left the vehicle in a parking lot.

{¶14} M.T. testified much of what she told police on January 22, 2024, was fabricated because she was intoxicated, angry, and vindictive. M.T. further testified she was cited for the accident based on what she had told police, had entered a no-contest plea and was found guilty by the Akron Municipal Court. When defense counsel asked why she entered the no-contest plea, M.T. answered "[t]hat's what I felt like doing. I don't know." When counsel followed up with, "[w]ell is it more than that's what you felt like doing? You were the driver?", M.T. stated, "[o]h, it was because I was the driver, yeah."

{¶15} During her testimony, M.T. denied there was a physical altercation between herself and Mr. Mantell on January 22, 2024. Mr. Mantell testified in his own defense and denied physically striking M.T. or pulling her hair that evening.

{¶16} The trial court took the matter under consideration and issued a written decision finding Mr. Mantell guilty of domestic violence. In its decision, the trial court concluded the

visible knot and swelling on M.T.'s face constituted physical harm and Mr. Mantell was M.T.'s boyfriend and living with her at the time of the incident, and therefore he was a family or household member of M.T. The trial court then discussed the differing accounts of what happened on January 22, 2024, and specifically found M.T.'s trial testimony to be inconsistent with the evidence. The trial court reviewed the body-cam video of M.T. recorded at the scene on January 22, 2024, and believed M.T. was credible that evening. The trial court noted some inconsistencies in what M.T. told police that evening, but these inconsistencies were explainable and did not "convince [the] court that [M.T.] was lying to police [that night.]" The trial court believed M.T. "took the fall for the traffic violation in Akron to protect [Mr. Mantell.]"

{¶17} This Court has thoroughly and independently reviewed the record, including the transcripts and exhibits, which include the body-cam video, photographs, and the 911 call. We cannot say Mr. Mantell has demonstrated the trial court lost its way in finding him guilty of domestic violence. In reaching this conclusion, we are mindful that the trial court was in the best position to make credibility determinations. The trial court was able to observe M.T.'s demeanor, both on the body-cam video taken immediately after the January 22, 2024 incident, and at trial. Nothing in this record indicates the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. In summary, we cannot say this is the exceptional case where the evidence weighs heavily against the conviction.

{¶18} Accordingly, Mr. Mantell's assignment of error is overruled.

### III.

{¶19} Mr. Mantell's sole assignment of error is overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

CHRISTOPHER ROBERSON, Attorney at Law, for Appellant.

MEGAN E. RABER, Director of Law, and MELODY L. BRIAND, Assistant Director of Law, for Appellee.